875 So.2d 1100 (2004)
JACKSON PUBLIC SCHOOL DISTRICT and Wilbur Hardy, Appellants,
v.
Tasha SMITH, as Next Friend and Natural Guardian of Jaquan Cox, A Minor, Appellee.
No. 2003-CA-00095-COA.
Court of Appeals of Mississippi.
June 22, 2004.
*1101 Jennifer L. Garvin, Fred L. Banks, John P. Sneed, James W. Shelson, Jackson, attorneys for appellants.
Larry Stamps Yumeka Chanee' Rushing, attorneys for appellee.
Before KING, C.J., THOMAS, IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. The Jackson Public School District (JPS) appeals from an adverse judgment of the Circuit Court of Hinds County in a negligence action where the judge awarded $850,000 in damages to Tasha Smith for the benefit of Smith's minor son, JaQuan Cox, who was struck by a JPS school bus. In this appeal, JPS asserts the following issues for our consideration: (1) whether the trial court erred in not allocating any fault to Tasha Smith for her negligence in causing the damages sustained by JaQuan, and (2) whether the trial court's non-economic damages award of $816,840.72 is grossly excessive.
¶ 2. We find that the damage award of $850,000 is excessive. Therefore, we remit the $850,000 award to $400,000.

FACTS
¶ 3. On January 21, 2000, JaQuan was struck by a JPS school bus as he was attempting to cross Nantucket Street in the City of Jackson to access a pathway leading to Raines Elementary School where he was a second grade student. At the time of this incident, JaQuan was eight years old.
¶ 4. The accident occurred just after JaQuan's mother, Tasha Smith, let him out of her van on the right hand side of Nantucket Street just short of the stop sign at the street's intersection with Flag Chapel Road.[1] No crosswalk or crossing guard *1102 was present at this location. JaQuan exited the van, went around the rear of the van, and proceeded to cross Nantucket Street to get to the pathway leading to his school.
¶ 5. At about the same time that JaQuan was exiting his mother's van, Wilbur Hardy, an employee of JPS, was driving a JPS school bus south on Flag Chapel approaching the intersection of Flag Chapel and Nantucket. When the oncoming traffic cleared on Flag Chapel, Hardy made a left turn onto Nantucket. As he made the turn, the school bus struck JaQuan. After the bus was brought to a stop, it was determined that JaQuan was under the bus's fender with his hand pinned under one of the bus's front wheels. Hardy immediately entered the bus and put it in reverse to back off JaQuan's hand.
¶ 6. JaQuan sustained scrapes on his chin, nose, lip, forehead, and back. He also had chipped teeth and sustained a more serious injury to his right hand, such as several deep lacerations, several damaged nail beds, and the loss of the tendon of his ring finger. JaQuan also missed three months of school.
¶ 7. Smith sued JPS and Hardy. JPS's liability was premised both on the doctrine of respondeat superior, since Hardy was JPS's employee, and on a theory of negligent hiring, training, and retaining of Hardy. Additionally, Smith alleged that JPS failed to develop, implement and/or enforce a reasonable and prudent safety program.
¶ 8. Smith's case against JPS proceeded to a bench trial, and at the conclusion of the trial, the circuit judge found that Hardy was negligent and that his negligence was the sole proximate cause of JaQuan's injuries. Consequently, the judge awarded JaQuan damages in the amount of $850,000, which included $33,159.28 in medical bills, pain and suffering, permanent disfigurement, and loss of enjoyment of life. JPS sought a new trial and a remittitur, but its motions were denied.

ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review
¶ 9. This action was brought under the Mississippi Torts Claims Act which permits negligence actions against JPS, but requires a bench trial with the circuit judge sitting as finder of fact. In Ezell v. Williams, 724 So.2d 396 (Miss.1998), our supreme court enunciated the following standard of review for such cases:
Our familiar standard of review requires that when a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings. Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong. This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact.
Id. at 397 (¶ 4) (citations omitted).
¶ 10. Concerning this standard of review, JPS argues that an important exception *1103 to this deferential standard exists and applies to the case sub judice. Citing McCarty v. State, 554 So.2d 909 (Miss. 1989) as its authority, JPS asserts that if the trial judge fails to make specific findings and makes only general findings, or makes no findings at all, the scope of review is considerably broader. JPS explains that the circuit judge made only general findings concerning allocation of negligence. It therefore concludes that the circuit judge is not entitled to the deference ordinarily accorded to his findings of fact because he made only "general findings" regarding Smith's negligence.
¶ 11. We are unpersuaded by JPS's arguments that McCarty is applicable here. McCarty involved the failure of a judge to make specific findings of fact when determining the admissibility of evidence. Here, we are concerned not with the factual basis for the admissibility of evidence, but with general factual determinations made by the trial judge concerning fault.
¶ 12. Because we find no merit in JPS's arguments, we find that the substantial evidence rule applies; therefore, the trial court's findings of fact should be given deference equal to that accorded other judges sitting without a jury.

1. Allocation of Fault to Tasha Smith
¶ 13. JPS argues that the circuit judge erred when he failed to allocate any fault to Smith for the injuries sustained by JaQuan. JPS argues that fault should have been assigned to Smith because the evidence demonstrates that she was negligent. JPS explains that Smith and her children were running late on the morning of the accident. It proposes that this circumstance contributed to Smith's negligent actions. Next, JPS specifically points out that Smith was negligent when she (1) dropped JaQuan off on the wrong side of the street, leaving him to "jaywalk" across the street alone and (2) allowed JaQuan to go behind her van to cross Nantucket. Finally, JPS asserts that the accident would not have occurred, or the probability of its occurring would have be reduced significantly if Smith had exercised ordinary care. According to JPS, Smith's actions, or lack thereof, virtually ensured that JaQuan would become a "darting child" from behind her van.
¶ 14. As a part of its submission that the trial judge erred in not assigning any fault to Smith, JPS posits that the circuit judge ignored the clear mandate of Mississippi Code Annotated § 85-5-7(7) (1972) which, in JPS's view, specifies that the judge shall make such a finding.
¶ 15. Section 85-5-7(7) states, "In actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault." We find that JPS misapplies the statute to justify its argument. Section 85-5-7(7) clearly pertains to the allocation of fault between joint tort-feasors. A party does not become a joint tort-feasor simply because the other party makes such an allegation. Here, the circuit judge found that Smith was not contributorily liable for the injury to her son. Therefore, she could not be a joint tort-feasor.
¶ 16. We do not find that the circuit judge was in manifest error when he found that Smith was not also negligent. While we may have found different had we been the trier of fact, we, as reviewing judges, are not at liberty to substitute our judgment in the place of the trial judge's unless we can say with conviction that the trial judge's findings lacked substantial evidentiary support or that the findings were arbitrary and capricious.
¶ 17. While it was perhaps unwise for Smith to let her son out of the van at a *1104 non-designated crossing walk, the spot where she dropped him off was nevertheless within the school zone. Moreover, the evidence demonstrates that the accident was caused by Hardy's failure to maintain a proper lookout. It is undisputed that Hardy did not see JaQuan prior to the accident. He testified that he arrived at the Raines Elementary school zone at approximately 7:30 a.m., that he had passed a school zone sign near the Nantucket/Flag Chapel intersection while traveling his normal route to pick up his students, and that he knew that students would be walking to Raines Elementary in this particular area. Further, the evidence demonstrates that Hardy was concentrating on beating the traffic on Flag Chapel Road while making his turn onto Nantucket and that he was clearly not watching for children that he knew or should have known might be in the area. Jasper Gray, a passenger on the bus at the time of the accident, testified that he clearly saw JaQuan exit the van, walk to the back of the van, and prepare to cross the street.

2. Non-Economic Damages

¶ 18. Next, JPS argues that the trial judge's award of $816,840.72 in non-economic damages is grossly excessive and shocks the conscience. Smith counters that substantial evidence supports the circuit judge's award of damages.
¶ 19. In determining whether the circuit judge's award of damages was excessive, our standard of review is whether substantial evidence supports the award. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992). To be excessive, damages "must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and ... to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant." U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis, 825 So.2d 38, 47(¶ 24) (Miss.2002).
¶ 20. The amount of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and health of the injured plaintiff, are all variables to be considered by the fact-finder in determining the amount of damages to be awarded. Woods v. Nichols, 416 So.2d 659, 671 (Miss.1982). Each suit for personal injury must be decided by the facts shown in that particular case. Id.
¶ 21. The trial judge determined that there was overwhelming evidence that JaQuan suffered significant scarring and permanent disfigurement to his hand, fingernails, wrist, and forearm. He consequently ordered that damages be awarded to Tasha and JaQuan in the amount of $850,000, including $33,159.28 in medical expenses. The trial judge, however, did not make any findings concerning any potential permanent impairment or functional limitations resulting from JaQuan's injuries.
¶ 22. The evidence demonstrates that JaQuan suffered injuries to his right hand, that he underwent three operations and a couple of wound cleanings and dressing changes between January 21, 2000 through November 22, 2000, to remedy his injuries, and that he underwent significant pain during these processes.
¶ 23. However, the depositions of Dr. Shelia Lindley and Dr. William Lineaweaver, both of whom treated JaQuan for the injuries he sustained from this accident, demonstrate that JaQuan, while incurring a permanent scar along his wrist, has no permanent impairment or functional limitation as a result of his injuries. Dr. Lindley stated that she did not believe that *1105 JaQuan would be limited in what he could do with his right hand. Moreover, Dr. William Lineaweaver, a plastic surgeon, gave a more detailed prognosis for JaQuan. In addressing permanent damage, past and future pain, and potential permanent functional impairment, he gave the following testimony:
Counsel for Smith: Let me ask you this: The scarring that you observed, I guess, in December of 2001, do you have an opinion whether or not it will be permanent, based on a reasonable degree of medical probability?
Dr. Lineaweaver: It will never go away. It will be permanent. Over time it should get softer and more pliable and less aggravating for him.
Q: Until that happens, do you have an opinion whether or not it will create any difficulties as far as his functional ability regarding that hand is concerned?
A: My impression seeing his activity in clinic and talking about his activity with his mother was that, although he apparently does have local symptoms that he will describe as either itching or uncomfortable, that there did not seem to be any limitation of activity.
Q: The difficulty or discomfort that he described, do you have an opinion how long that will last, based on a reasonable degree of medical probability?
A: Potentially lifelong.
Q: Lifelong. And would that be including itching and scaling?
A: I would say, based on his reporting at the last clinic visit, local itching, perhaps local irritation if he were doing a significant manual activity that would rub against the area. But the chances of these complications beingof being persistent are probably small over his lifetime, and the chances of them being significant are probably very small.
* * * *
Q: Based upon a reasonable degree of medical probability, do you have an opinion as to whether or not JaQuan Cox experienced any pain as a result of the injury that you treated him for?
A: Oh, I think that there's no question that he experienced pain.
Q: Do you have an opinion, based on a reasonable degree of medical probability, whether or not he will suffer any pain in the future as a result of the injury that you treated him for?
A: I think the pain will be dramatically minimized by having removed that piece of injured nerve and by reorienting the scar. He may have local areas of discomfort, but I don't think that he'll have any pain that significantly interferes with his activities.
¶ 24. After examining the facts and the circumstances unique to this case, and the personal characteristics unique to JaQuan, we concede that the trial court had ample material in the record to justify a reasonable award of damages. However, we find that on the unique facts of this case, that the award of $850,00 in damages is so high as to be unreasonable at first blush and is contrary to the overwhelming weight of the credible evidence. Therefore, we remit the award to $400,000. If Tasha Smith accepts the remittitur within ten days after the judgment of this Court becomes final, then the award as reduced will be affirmed. Otherwise, a new trial shall be held on damages only.
¶ 25. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, AS TO DAMAGES, IS REMITTED TO $400,000 AND AFFIRMED AS REMITTED IF THE REMITTITUR IS ACCEPTED *1106 BY TASHA SMITH WITHIN TEN DAYS AFTER THE JUDGMENT OF THIS COURT BECOMES FINAL. IF THE REMITTITUR IS REJECTED, THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL ON DAMAGES ONLY. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEE.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] Nantucket Street is a two-lane neighborhood street which runs east to west. The street had no dividing line. Nantucket ended at an intersection with Flag Chapel Road where a stop sign was erected. Flag Chapel runs north and south. No stop sign or signal light was present on Flag Chapel at this intersection. Raines Elementary School is located on Flag Chapel, approximately one block south of the intersection of Flag Chapel and Nantucket. The Nantucket/Flag Chapel intersection is considered a school zone. Warning signs were posted near the intersection to caution drivers that small children may have been present.