GRIFFIS, P.J.,
dissenting:
¶ 36. The circumstances of this case are tragic. This is our second time to consider this case. Because I am of the opinion that the circuit court failed to follow our instructions in Mississippi Department of Human Services v. S.W., 974 So.2d 253, 260 (¶ 22) (Miss.Ct.App.2007), I would reverse and remand this case for further proceedings. The circuit court has the responsibility to decide each element of S.W.’s claim and to issue findings of fact and conclusions of law. In our earlier decision, we instructed the circuit court to explain his factual findings as to the required elements of proximate cause and damages.[24] He did not follow our instruction. Therefore, I respectfully dissent.
*648 I. The required elements of S'.W.’.s claim under the MTCA.
¶ 37. DHS’s liability to S.W. is limited according to the provisions of the Mississippi Tort Claims Act (MTCA). Miss.Code Ann. § 11-46-1 et seq. DHS’s liability concerns only whether DHS’s acts or omissions were discretionary, which would result in immunity, or ministerial, which would not result in immunity. Section 11-46 — 9(d) provides that DHS, as a governmental agency, is immune from liability for any act “[biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]”
¶ 38. This case concerns a number of functions by DHS, some of which were discretionary and some of which were ministerial. Our earlier opinion determined that there were three separate categories of DHS’s functions that were ministerial, and the discretionary-function exemption did not bar S.W.’s claim.[25] S.W., 974 So.2d at 258-60 (¶¶ 13-21).
¶ 39. The plurality refers to the “special relationship” that existed between DHS and S.W. The plurality cites three supreme court decisions for this proposition. See Fortenberry v. City of Jackson, 71 So.3d 1196, 1201 (¶ 13) (Miss.2011); In re E.K., 20 So.3d 1216, 1227 n. 2 (¶ 42) (Miss.2009); Tunica County v. Gray, 13 So.3d 826, 832 (¶ 30) (Miss.2009). However, none of these cases refer to a “special relationship” or in any way change the analysis under the *649 MTCA. The fact that there was a “special relationship” between DHS and S.W. has no bearing on this case. This language is not included in the circuit court’s March 25, 2010, opinion and order or in this Court’s decision in S.W., 974 So.2d at 260 (¶ 22). S.W.’s right to recover from DHS is based on the MTCA. Further S.W.’s right to recover from DHS is determined solely based on whether DHS’s acts or omissions are determined to be discretionary (immune) function or ministerial (not immune) function. See Miss.Code Ann. § 11 — 46—9.
¶ 40. In S.W., this Court held: “To prevail on a claim of negligence, the plaintiff has the burden of proving (1) duty, (2) breach of duty, (3) causation, and (4) damages, by a preponderance of the evidence.” S.W., 974 So.2d at 260 (¶ 22) (citations omitted). The Court affirmed the circuit court’s decision that DHS was liable to S.W. We found a duty and a breach of that duty, and we concluded that the three categories of duties were ministerial functions. Thus, we reversed and remanded for a new trial on the remaining elements, i.e., damages and causation. Id. at 264 (¶¶ 35-36).
¶ 41. Our decision was based on the premise that the circuit court had provided “an insufficient basis for review of’ damages. Id. at 264 (¶¶ 35-36). Further, the Court held that “[t]he trial judge failed to disclose how he arrived at the $750,000 damage award.” Id. at (¶ 35) (emphasis added). This Court ruled:
The record of the proceedings below provides an insufficient basis for review of the issues presented under this assignment of error. The trial judge failed to disclose how he arrived at the $750,000 damage award. As noted above, the trial judge found that DHS breached three separate duties; however, there is no finding in the order as to what damage, if any, was attributed to each of the respective breaches. This information is crucial for this Court to fully address the issues raised in this assignment of error because the separate breaches identified by the trial judge occurred during two separate periods of time, each carrying a different statutory limitation of liability under subsection (l)(a) and (b) — whether the award complies with the statutory caps of [sjection 11-46-15(1). In the absence of such findings, we are unable to determine which statutory cap is applicable to limit damages awarded for each respective breach. Therefore, from the trial judge’s order, we are unable to arrive at a maximum monetary figure which S.W. is entitled to recover under Section 11-46-15(1). However, we find that under any calculation, the award of $750,000 is above the statutory limitation of [sjection 11-46-15(1). We, therefore, reverse and remand for a new trial on damages only.
CONCLUSION
However we reverse and remand the case for a new trial on damages and instruct the trial judge to include in his or her order findings of fact which clearly identify what damage, if any, is attributed to each of the three breaches respectively. We further instruct the trial judge to assess damages for each breach in accordance with the applicable statutory limitation pursuant to [sjection 11-46-15(1) and to specify in his or her findings of fact under which provision damages are awarded. In the event an appeal is taken from the new trial on damages only, this will ensure that the reviewing court therein will be able to sufficiently address any issues pertaining to the limitations of liability under the MTCA.
Id. at 264 (¶¶ 35-36) (emphasis added).
¶ 42. The issue now before this Court is whether the circuit court, on remand, *650 properly explained (i.e., through findings of fact and conclusions of law) the required elements of damages and causation.
¶ 43. The plurality does not refer to the circuit court’s opinion and order to substantiate its decision. Instead, the plurality attempts to justify the award based on facts that it has found in the record. This Court is to review and analyze the findings of fact and conclusions of law of the circuit court. I will not substitute my findings of fact for that of the circuit court. Instead, I review the circuit court’s findings to determine whether it is “supported by ‘substantial, credible, and reasonable evidence.’ ” City of Jackson v. Presley, 40 So.3d 520, 522 (¶ 9) (Miss.2010). The circuit court’s conclusions of law, including the proper application of the MTCA, are reviewed de novo. Id.
¶ 44. On remand, the circuit court entered his findings of fact and conclusions of law in an opinion and order dated March 25, 2010. The circuit court ruled:
1. This Court finds that the Defendant breached its duties to the plaintiffs in three respects: 1) failing to make required face-to-face contacts with the plaintiff; 2) failing to properly investigate allegations of abuse; and 3) failing to provide counseling. As a result of these breaches, the Court finds that the plaintiff has experienced a great deal of emotional distress, mental pain, suffering, and humiliation. Accordingly, the plaintiff is entitled to an award of damages to be assessed against the defendant.
This paragraph does not contain actual factual findings. The plurality’s opinion seems to recognize, albeit implicitly, that the circuit judge failed to make the required factual findings.
¶ 45. The next four paragraphs of the circuit court’s March 25 order simply find that there were ten “occurrences.” Then, the circuit court assessed $50,000 in damages for each “occurrence” and entered a final judgment in the total amount of $500,000.
¶ 46. We need to clarify the term “occurrence.” This Court used the term “occurrence” in our earlier opinion. R.W., 974 So.2d at 263 (¶33). The MTCA does not define or use the term “occurrence.” Miss.Code. Ann. § 11-46-1. The MTCA does consider the “act or omission” by a governmental entity or its employee. In section 11-46-15, the MTCA refers to the governmental entity’s “acts or omissions occurring on or after [certain dates]” to determine the limitation of liability. The term “occurrence” is used in this case to substitute for the duty or “act or omission,” or negligence, of the governmental agency or employee. Hence, the term “occurrence” only refers to the basis of DHS’s liability (i.e., duty and breach of duty), which are the first two elements of the claim. We must still decide the remaining elements, i.e., causation and damages. The “occurrence” must proximately cause damages for S.W. to recover.
¶47. The circuit court must quantify the total amount of damages incurred by S.W. and specify through factual findings the amount of the damages that were proximately caused by or contributed to by DHS’s negligent ministerial (non-immune) acts or omissions. The plurality’s opinion spends a great deal of time and effort to support its findings to uphold the damages award to S.W. I agree that S.W. was damaged by the sexual abuse he endured while at the CDU or SNIPS.[26] *651 However, the circuit court must quantify S.W.’s damages and then explain, through factual findings, how DHS’s “occurrences” caused or contributed to such damages.
¶ 48. When the trial judge sits as the trier of fact without a jury, the court may be required to “find the facts specially and state separately its conclusions of law thereon.” M.R.C.P. 52(a). Here, the circuit judge was required to specifically state his findings of fact and conclusions of law. The circuit judge’s analysis of the amount of damages S.W. sustained' as a result of DHS’s numerous breaches of duty is not specifically stated in his order. The circuit judge should have arrived at an amount of S.W.’s total damages, explained how the damages were calculated, and identified each occurrence to which the damages were allocated.
¶49. Here, it appears that the circuit judge simply identified ten “occurrences,” with the categories that we decided were ministerial (i.e., nonimmune) duties. The March 25 order does not reflect how the circuit court arrived at $50,000 for each occurrence or how the occurrences proximately caused the damages.
¶ 50. Because this Court directed the circuit court to give us the benefit of an explanation, through factual findings and conclusions of law, “under which provision damages are awarded factual findings,” I expected to receive and review the court’s factual findings that would explain his decision to award damages. S.ff., 974 So.2d at 264 (¶¶ 35-36). There was no such explanation. The plurality’s factual findings are impressive and convincing. However, the plurality does not refer to or review the circuit court’s finding.
¶ 51. I cannot sufficiently address whether the damages awarded were the proximate result of DHS’s “occurrences.” Further, I certainly cannot sufficiently address the issues pertaining to the limitations of liability under the MTCA. I would again reverse and remand this case to the circuit court to comply with this Court’s prior decision and, again, instruct the circuit court:
to specify in his or her findings of fact under which provision damages are awarded. In the event an appeal is taken from the new trial on damages only, this will ensure that the reviewing court therein will be able to sufficiently address any issues pertaining to the limitations of liability under the MTCA.

Id.

II. The circuit court’s order fails to address proximate cause and explain the basis for the award of damages.

¶ 52. In S.W., this Court found three types of ministerial acts or omissions (i.e., duties) that DHS breached: (1) regular contact with the foster child, (2) investigation of reported abuse, and (3) provision of medical care (i.e., counseling). We concluded that DHS was not immune for its acts or omissions under these categories. S.W., 974 So.2d at 258-60 (¶¶ 13-21).
¶ 53. The question before this Court is not whether S.W. was sexually abused while in the custody of DHS, whether *652 DHS failed to protect S.W., whether DHS had a special relationship with S.W., or whether DHS was negligent in its supervision of S.W. Instead, the ultimate question is whether S.W. can establish, by a preponderance of the evidence, that he suffered or incurred damages that were proximately caused by DHS’s ministerial (non-immune) negligent acts or omissions.
¶ 54. The circuit court’s only reference to proximate cause, in the March 25th order, stated:
1. This Court finds that the Defendant breached its duties to the plaintiffs in three respects: 1) failing to make required face-to-face contacts with the plaintiff; 2) failing to properly investigate allegations of abuse; and 3) failing to provide counseling. As a result of these breaches, the Court finds that the plaintiff has experienced a great deal of emotional distress, mental pain, suffering, and humiliation. Accordingly, the plaintiff is entitled to an award of damages to be assessed against the defendant.
(Emphasis added).
¶ 55. The record supports a finding that S.W. was damaged by the sexual abuse he incurred at the hands of Williams and Howard while S.W. was at CDU and SNIPS. However, the fact that DHS placed S.W. at CDU and SNIPS is not a basis for liability here. Those decisions were clearly discretionary acts, and DHS was immune for such actions. Likewise, DHS is immune from its discretionary decisions made in the supervision of S.W. and for part of the investigation.
¶ 56. To recover damages from DHS, S.W. must first show that DHS’s ministerial (non-immune) negligent acts (DHS’s failure to make required face-to-face contacts, DHS’s failure to properly investigate allegations of abuse, and DHS’s failure to provide counseling) were the proximate cause of damages to S.W. S.W., 974 So.2d at 258-60 (¶¶ 13-21). S.W. must prove his damages and causation. The language quoted above, from paragraph 1 of the circuit court’s March 25 order, is the only finding of fact and conclusion of law we have as to the circuit court’s decision on proximate cause and damages.

1. Damages

¶ 57. “Injury or damage to the person complaining is an essential element of actionable negligence.” Brown Oil Tools, Inc. v. Schmidt, 246 Miss. 238, 148 So.2d 685, 687 (1963) (citing Phillips v. Delta Motor Lines, Inc., 235 Miss. 1, 108 So.2d 409, 419 (1959)). The record contains sufficient evidence to award S.W. damages against DHS for pain and suffering, emotional distress and humiliation that were caused by DHS’s negligent conduct. The record contains absolutely no evidence to support an award of damages for past or future medical expenses, disfigurement or mutilation of the body, permanent or temporary disability, or loss of wages or wage earning capacity.
¶ 58. S.W. testified that he was angry and humiliated. He also testified that the events that occurred to him make him feel like a “gay man.” He gave no further explanation. At the time of his testimony, S.W. was 21 years old, and he testified that he continues to engage in sex with men in exchange for money. I agree that this evidence is sufficient to base an award of damages to S.W.
¶ 59. The question is how much and whether the damages S.W. sustained were proximately caused by DHS’s breaches of non-immune ministerial duties (i.e., the “occurrences”), which are recoverable, or DHS’s breaches of discretionary duties, which are NOT recoverable. This is why we need an explanation (i.e., findings of fact) from the circuit court.
*653 ¶ 60. In S.W., this Court specifically instructed “the trial judge to include in his or her order findings of fact which clearly identify what damage, if any, is attributed to each of the three breaches respectively.” As I discussed in the previous section, I cannot find where the circuit judge followed our instructions. Instead, the circuit judge ruled that “[a]s a result of these breaches, the Court finds that the plaintiff has experienced a great deal of emotional distress, mental pain, suffering, and humiliation.”
¶ 61. At this point, I expected the circuit judge to state his factual findings as to how much damages S.W. incurred as a result of the emotional distress, mental pain, suffering and humiliation that he incurred. The circuit court simply ignored our earlier instruction, and we are in almost the exact same position in this appeal.
¶ 62. The circuit court awarded $50,000 for each neglected face-to-face contact; $50,000 for DHS’s inadequate investigation of the allegations of inappropriate behavior; and $50,000 for DHS’s failure to provide adequate counseling upon S.W.’s replacement in his own home. The circuit judge offered no explanation how each neglected face-to-face contact, the inadequate investigation, or the failure to provide counseling caused what amount of damages to S.W. This Court’s earlier opinion made clear that the circuit judge could not enter a lump-sum damages award. Instead, the circuit court was expressly required to explain his decision to award damages. He did not. I have absolutely no idea as to the circuit court’s intended factual findings supporting the award of damages to S.W. The plurality has now given us the benefit of its factual findings.
¶ 63. As concerned as I am about the lack of the circuit court’s findings as to S.W.’s damages, I am even more troubled by the circuit court’s omission of findings of fact, or any actual discussion, about the element of proximate cause.

2. Proximate cause

¶ 64. For a plaintiff to prevail in a negligence action, the plaintiff must prove not only that the defendant was negligent but also that the plaintiffs injury was proximately caused by the defendant’s negligence. “In order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage.” Glover v. Jackson State Univ., 968 So.2d 1267, 1277 (¶ 31) (Miss.2007). “A defendant’s negligence is the cause in fact of a plaintiffs damage where the fact finder concludes that, but for the defendant’s negligence, the injury would not have occurred.” Id. at (¶ 32). The defendant’s negligence is the legal cause if the “damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act.” Id. at (¶ 33).
¶ 65. Recently, the supreme court quoted the following language from Glover articulating the following test for “cause in fact”:
but for the defendant’s negligence, the injury would not have occurred. Stated differently, the cause in fact of an injury is that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred.
Martin v. St. Dominic-Jackson Mem’l Hosp., 90 So.3d 43 (Miss.2012) (quoting Glover, 968 So.2d at 1277 (¶ 32)).
¶ 66. The circuit court must find that but for DHS’s ministerial (non-immune) negligent acts or omissions, S.W.’s injury would not have occurred. Said differently, *654 DHS’s ministerial (non-immune) negligent acts or omissions must have been a substantial factor in bringing about S.W.’s injury, and without these acts or omissions the harm would not have occurred.
¶ 67. I will explain why I believe it is crucial for this Court to have the benefit of the circuit court’s findings of fact as to the elements of damages and proximate cause, and I will use the categories of damages awarded in this case.

3. Damages for Failure to Conduct Quarterly Face-to-face Visits from October 1996 through June 1997

¶ 68. First, I consider the damages awarded for the failure to conduct quarterly face-to-face visits from October 1996 through June 1997. This is the time period that S.W. was in the physical custody of DHS. In the March 25, 2010 opinion and order, the circuit judge concluded:
2. From the period of October 1996 through June 1997, DHS was obligated to have quarterly face-to-face visits with the plaintiff. During this period DHS made only one visit, instead of the three required visits. For each visit DHS failed to initiate, the plaintiff is entitled to damages. The statutory cap for each occurrence during this period is $50,000. Miss.Code Ann. § 11-46-15(1)(a)[-](b). The Court finds that the plaintiff is entitled to $50,000.00 for each visit DHS failed to initiate during this period. Accordingly, for the period of October 1996 through June 1997, the plaintiff is entitled to $100,000.00.
(Emphasis added).
¶ 69. The circuit court finds that DHS made one of three required visits. In our earlier opinion, this Court ruled:
S.W. was admitted to CDU on October 4, 1996, later transferred to SNIPS, and returned home on June 6, 1997. The record reflects that DHS made only two face-to-face contacts with S.W. during the nine months he resided in these facilities. One occurred on April 25, 1996 — six months into S.W.’s placement. The other occurred on June 6, 1997, when S.W. was driven from SNIPS to his mother’s home by DHS social worker, Beth Leggett. By making only two face-to-face contacts in nine months[,] DHS breached its duty to care. Accordingly, we find that the trial judge did not err in so holding.
S.W., 974 So.2d at 261 (¶ 26) (emphasis added).
¶ 70. Clearly, there is a contradiction between the factual finding of the circuit court and this Court’s earlier statement of fact. We found that the circuit court was not in error for holding that DHS missed one of three visits; now the plurality holds that the circuit court was not in error for holding that DHS missed two of three required visits. I cannot reconcile this contradiction.
¶ 71. Regardless, during this time period, S.W. was at CDU and SNIPS. The record supports a finding that S.W.’s incurred damages during this time period. Yet, the circuit judge does not explain what damages that S.W. incurred prior to the end of June 1997. The circuit judge also considers that the failure to make two of the three visits constitute separate occurrences, but does not explain why he makes this finding.
¶ 72. The circuit judge must explain how much damages S.W. sustained by these occurrences. The circuit court must also explain its findings regarding how this breach of duty, i.e., the failure to conduct two visits, proximately caused S.W. damages. In the one visit, S.W. did not reveal that he was having any sexual abuse or encounters. He did not reveal any problems at CDU or SNIPS. Certainly S.W. had the opportunity to inform DHS that he *655 was being sexually assaulted or abused by employees of CDU or SNIPS during this face-to-face visit but he did not. S.W.’s failure to inform DHS of the sexual abuse during the visit that was conducted must be included in the circuit court’s factual findings and analysis of proximate cause.
¶ 73. I would remand for the circuit judge to give us the benefit of his findings of faet before I consider the sufficiency of the evidence.

4. Damages for Failure to Conduct Monthly Face-to-face Visits from July 1997 through December 1997.

¶ 74. Next, I consider the damages awarded for the failure to conduct monthly face-to-face visits in the period of July 1997 through December 1997. During this the time period, DHS had legal custody of 5.W., but he was in the physical custody of his mother, T.W. In the March 25, 2010 opinion and order, the circuit judge concluded:
3. For the period of July 1997 through December 1997, DHS was required to make monthly face-to-face visits. The record reflects DHS failed to make the monthly visits. For each visit DHS failed to initiate during this time period, the plaintiff is entitled to damages. The Court finds that DHS missed six monthly visits which is tantamount to six separate occurrences. Therefore, the statutory cap for each occurrence during this time period is $250,000.00. Miss.Code Ann. § ll-46-15(l)(a)(b). The Court finds that plaintiff is entitled to $50,000.00 for each visit DHS failed to initiate during this period. Therefore, since DHS missed six monthly visits, the plaintiff is entitled to a sum of $300,000.00 for the missed visits during this time period.
¶ 75. The circuit court awarded S.W. $300,000 for damages based on “occurrences” that happened while S.W. was in his mother’s custody in June of 1997.[27] During this period, there were no further sexual encounters between S.W. and either Williams or Howard. In fact, T.W. revealed the possibility of sexual abuse, and there was a meeting with DHS officials. S.W. was asked if he had suffered any abuse. He said he had not.
¶ 76. The circuit court must provide us with factual findings that support the conclusion that S.W. has established causation and damages due to DHS’s failure to conduct monthly face-to-face visits from July 1997 through December 1997. While I cannot find the evidence to support an award of damages for the failure to conduct monthly face-to-face visits from July 1997 through December 1997, I would remand for the circuit judge to give us the benefit of his findings of fact before I consider the sufficiency of the evidence.
¶ 77. However, since the plurality seeks to affirm this award, I will address further facts that were established in the record. The circuit court found that DHS made no visits during this time and was required to make five. The record indicates that DHS did make at least five face-to-face contacts with S.W. According to the record, DHS’s face-to-face visits during this time period actually occurred with S.W. on July 7, 1997; August 20, 1997; September 4, 1997; September 7, 1997; and November 6, 1997. Further, DHS made at least six attempts to have face-to-face contact with S.W. during this same time period, but these visits did not occur because S.W. was absent at *656 the time of the scheduled in-home meetings, despite being advised of the appointments. Since DHS actually visited with S.W. on at least five occasions and attempted at least six more visits, the circuit court’s finding that zero visits occurred during this time period was clearly unsupported by the evidence presented.

5. Damages for Failure to Conduct an Adequate Investigation of Abuse

¶ 78. Next, I consider the damages awarded for the failure to conduct an adequate investigation. In the March 25, 2010 opinion and order, the circuit judge concluded:
4. The Court will now address DHS’s failure to conduct an adequate investigation of abuse. The Court finds the failure to investigate to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the Court awards $50,000.00 for breach of the duty to investigate abuse.
In S.W. this Court held:
The manual sets forth the procedure by which investigations of reported abuse are to take place. Generally, the social worker is required first to investigate the report and subsequently to decide whether the report is substantiated based on the results of the investigation. As to the investigation, the manual requires, among other things, that (1) “children should be interviewed privately, separately, and in a non-threatening place[”;] (2) “an unannounced visit is required” to the residential facility for interview with the administrator; (3) DHS review the facility’s policy and procedures; and (4) the alleged perpetrator be interviewed. Administrative Manual Vol. IV, Section B, pages 2041-42.
DHS’s duty to investigate involves both ministerial and discretionary functions. DHS workers are certainly called upon to exercise their own policy-based judgment in deciding whether a report of abuse is substantiated. However, the decision whether to substantiate the report requires, as a precondition, that DHS conduct an investigation of the alleged abuse. See T.M. v. Noblitt, 650 So.2d 1340, 1345 (Miss.1995) (“While the duty to investigate was of a ministerial nature, the next step of deciding whether reasonable cause actually existed to report the incident was inarguably one which required personal discretion.”).
We find that DHS has no discretion to prematurely terminate an investigation without fully performing the outlined duties; to do so violates specific mandatory directives. To this extent, the discretionary function exemption does not bar a claim against DHS for S.W.’s claim of insufficient investigation.
S.W., 974 So.2d at 259-60 (¶¶ 16-18).
¶ 79. Our earlier opinion recognized that the duty to investigate included both ministerial and discretionary functions. DHS lost immunity because “DHS has no discretion to prematurely terminate an investigation without fully performing the outlined duties.” Id. at 260 (¶ 18). We recognized that certain parts of the investigation were discretionary and therefore immune. Thus, S.W. can recover from DHS, as to this non-immune ministerial negligent act, only if he can show that he was damaged as a proximate result of DHS’s decision “to prematurely terminate an investigation without fully performing the outlined duties.” Id. To award damages based on this finding, the circuit court must provide us with an explanation of the decision. The question is how S.W. was damaged because of DHS’s “insufficient investigation.” Id.
¶ 80. Instead, the circuit court provided no explanation as to the amount damages S.W. incurred as a direct or contributing *657 result of DHS’s failure to conduct an adequate investigation. The circuit court only provides an amount, $50,000; but, the court does not explain how the $50,000 compensates S.W. for damages he incurred. The circuit judge must quantify the damages S.W. is entitled to recover because of DHS’s decision “to prematurely terminate an investigation without fully performing the outlined duties” or because of the “insufficient investigation.”
¶ 81. The circuit court also does not explain how DHS failed to conduct an adequate investigation. During the time the sexual encounters were happening, DHS did meet with S.W., and he did not reveal the fact that he was being sexually assaulted or abused. Even after he returned to his mother’s custody, S.W. was asked if he had been sexually abused, and he said no. Either the circuit court or the plurality should be able to explain how these meetings were not an adequate investigation. More importantly, either the circuit court or the plurality should be able to quantify the damages S.W. sustained as a proximate result of the “insufficient investigation.”
¶ 82. While I cannot find the evidence to support an award of damages for the failure to conduct an adequate investigation, I would remand for the circuit judge to give us the benefit of his findings of fact before I consider the sufficiency of the evidence.

6. Damages for Failure to Provide Counseling

¶ 83. In my opinion, this is the most difficult portion of the damages award to analyze. The circuit court awarded S.W. $50,000 for DHS’s failure to provide S.W. counseling. In the March 25, 2010 Opinion and Order, the circuit judge concluded:
5. Finally, this Court found that DHS breached it[s] duty to provide much needed counseling upon plaintiffs return home. The Court finds the failure to provide counseling to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the Court awards $50,000.00 [for the] failure to provide counseling.
There is no explanation as to the amount damages S.W. incurred as a direct or contributing result of S.W.’s lack of counseling.
In S. W, this Court held:
Again, we find that DHS’s actions in performing its duty involve both ministerial and discretionary functions. DHS employees are required to call upon their own policy-based judgment to determine whether the child needs a particular service — in the instant case, mental health treatment. However, once the determination is made, DHS is ultimately required to ensure that the child receives the service. The duty to ensure that the child receives the needed service involves no policy-based judgment or discretion.... DHS determined that S.W. needed counseling and made an appointment with Clayton Hodge but failed to ensure that he actually received the counseling for quite some time. We find that the discretionary function exemption does not bar S.W.’s claim for DHS’s failure to ensure that his medical needs were being met.
S.W., 974 So.2d at 260 (¶20).
¶84. S.W. was required to show that the non-immune ministerial negligent act (i.e., DHS’s failure to ensure S.W.’s medical needs were being met through needed counseling) proximately caused S.W. damages. The circuit court did not explain how he arrived at the amount of $50,000 to compensates S.W. for DHS’s failure to provide “much needed counseling upon plaintiffs return home” or how the “failure to provide” such counseling proximately caused any damages to S.W.
*658 ¶ 85. In this Court’s earlier opinion, we concluded that “DHS determined that S.W. needed counseling and made an appointment with Clayton Hodge but failed to ensure that he actually received the counseling for quite some time.” Id. The record reveals that twice a DHS employee provided T.W. with the name and telephone number of a psychologist who was ready, willing and able to meet with S.W. and offer his services to help S.W. After the name and number was first provided to T.W., a DHS employee inquired of T.W. whether S.W. had. been to see the psychologist. T.W. stated that she had lost the information. The DHS employee then provided T.W. with the name and number again. Apparently, S.W. did not go see the psychologist because his mother, T.W., did not make the appointment.
¶ 86. If DHS provided S.W. with access to a mental-health professional, a psychologist, and T.W. simply did not contact the psychologist, it is difficult for me to understand how the court could find that S.W. proved that he was damaged by DHS’s failure to provide counseling or, more importantly, how such could proximately cause any damages to S.W. Further, there is no evidence that S.W. suffered any damages because he did not see a psychologist.
¶ 87. Without the benefit of the circuit court’s findings on this issue, I am of the opinion that this evidence would be sufficient to reverse and render any award of damages for the failure to provide medical care (i.e., counseling). Nevertheless, I would remand this issue to the circuit judge to give us the benefit of his findings of fact before I consider the sufficiency of the evidence.

III. The damages awarded were excessive.

¶ 88. As I have previously discussed, the circuit court’s decision provides a minimal factual finding to support an award of damages.
¶ 89. The circuit court ordered DHS pay $500,000 in damages to S.W. I am not sure what damages S.W. incurred. I certainly do not know what damages the circuit court found S.W. had incurred. The plurality does provide its factual findings.
¶ 90. DHS argues that the award of $500,000 is flagrantly outrageous and extravagant in light of the evidence (or rather, the lack thereof) presented by S.W. at trial. Without an explanation as to the how the circuit court arrived at its award of $50,000 per breach, DHS also argues that the award is the result of guesswork, is grossly excessive, and cannot be sustained. Univ. of S. Miss. v. Williams, 891 So.2d 160, 175-176 (¶ 46) (Miss.2004) (citing Frierson v. Delta Outdoor, Inc., 794 So.2d 220, 225 (¶ 14) (Miss.2001)) (stating that the law limits speculation and conjecture and imposes duties of mitigation to the injured party and that damages may only be recovered when the evidence presented at trial removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty).
¶ 91. In Mississippi, where a damages award, such as this one, is “so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous” and is apparently, with all due respect, “actuated by passion, partiality, prejudice or corruption,” a remittitur is proper. Jackson Pub. Sch. Dist. v. Smith, 875 So.2d 1100, 1104 (¶ 19) (Miss.Ct.App.2004). To determine whether an award is excessive, this Court should consider “[t]he amount of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical ex *659 penses, loss of wages and wage-earning capacity and sex, age and health of the injured plaintiff.” Id. Where evidence is absent or grossly inadequate, the amount of the damages awarded should reflect the lack of evidence.
¶ 92. Again, in this case, the only evidence presented in support of an award for damages was S.W.’s vague testimony concerning his anger. There was no evidence presented to establish past or future medical expenses for treatment or therapy, physical manifestation of an emotional or mental injury, loss of wage earning capacity, disability, etc. I would like to be able to evaluate the award of damages. However, I do not have the necessary information before me.
¶ 93. The award of damages in this case will be difficult. S.W.’s damages may be incapable of exact measurement. Regardless, a plaintiff is still required to offer the best evidence available to him that may reduce those damages to an ascertainable figure. In Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss.1984), the supreme court held:
[Wjhere it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence — with such certainty as the nature of the particular case may permit — lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.
As noted in Cain, a plaintiff under this rule cannot ignore information, methods and procedures available to him whereby he can accurately prove the amount of monetary damages and make a jury issue simply by testimony that he suffered some damage. Id.
¶ 94. Here, S.W. could have offered evidence of psychological treatment or therapy, a medical opinion as to the effect of DHS’s actions on his mental and emotional state, a decrease in his overall quality of life, disability, or the like. However, at trial, S.W. established nothing more than the fact that he was angry and humiliated. It seems to me that such testimony, alone, is insufficient to establish any award of damages, much less an award of $50,000 per breach of duty, for a total of $500,000.
¶ 95. Without an explanation in the form of findings of fact by the circuit court, I can only determine that the amount of the award was nothing more than a guess as to the amount of damages suffered by S.W. As such, I would not affirm the award of damages.
IV. The MTCA limits S. W. ⅛ total award in this case to no more than $50,000.
¶ 96. The plurality finds that the award in this case falls within the statutory caps. I am of the opinion that the circuit court has not resolved this issue, and the failure to provide factual findings prevents this Court from a proper analysis of this issue.
¶ 97. DHS asks this Court to interpret the statutory limitation under the MTCA. DHS argues that the MTCA, specifically Mississippi Code Annotated section 11-46-15, limits the total award of damages to S.W. to $50,000 or, alternatively, $250,000. The consideration of this issue is complicated by the fact that DHS’s tortious con *660 duct occurred both before and after July 1, 1997.
¶ 98. The amount of damages that may be awarded in a claim subject to the MTCA is limited. Section 11-46 — 15 provides:
(1) In any claim or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability shall not exceed the following for all claims arising out of a single occurrence for all damages permitted under this chapter:
(a) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1993, but before July 1, 1997, the sum of Fifty Thousand Dollars ($50,000.00).
(b) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1997, but before July 1, 2001, the sum of Two Hundred Fifty Thousand Dollars ($250,000.00).
(2) No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages or for interest prior to judgment, or an award of attorney’s fees unless attorney’s fees are specifically authorized by law.
(3) Except as otherwise provided in Section 11-46-17(4), in any suit brought under the provisions of this chapter, if the verdict which is returned, when added to costs and any attorney’s fees authorized by law, would exceed the maximum dollar amount of liability provided in subsection (1) of this section, the court shall reduce the verdict accordingly and enter judgment in an amount not to exceed the maximum dollar amount of liability provided in subsection (1) of this section.
¶ 99. The circuit court awarded S.W. the total sum of $500,000. The circuit court awarded $50,000 for each of ten “occurrences,” including each neglected face-to-face contact, DHS’s inadequate investigation of the allegations of inappropriate behavior, and DHS’s failure to provide adequate counseling upon S.W.’s replacement in his own home. The circuit court categorized the ten separate occurrences as follows:
a. Two (2) neglected face-to-face contacts occurred before July 1, 1997. Each occurrence was subject to [the] $50,000 limit.
b. Six (6) neglected face-to-face contacts, the inadequate investigation and the failure to provide counseling occurred after July 1, 1997. Each occurrence was subject to the $250,000 limit.
¶ 100. DHS contends that all of S.W.’s claims against DHS constitute one single occurrence under the MTCA and are subject to one limit on damages. See Miss. Code Ann. § 11-46-15. DHS argues that the language of section 11-46-15 is unambiguous and should be construed as written. The statute states unequivocally that “[i]n any ... suit ... liability shall not exceed the following for all claims” and sets forth the pertinent amount. Miss. Code Ann. § 11-46-15(1). Accordingly, DHS claims that it cannot be disputed that, as explicitly set forth in the statute, S.W.’s claims for damages, brought together in one suit and regardless of the number of theories of recovery, are subject to one damages limitation.
¶ 101. The question for this Court to decide is whether DHS’s tortious conduct was one occurrence or ten separate occurrences.
¶ 102. In Prentiss County Board of Education v. Beaumont, 815 So.2d 1135, *661 1137-38 (¶ 7) (Miss.2002), the supreme court concluded that Mississippi is a “single occurrence” state, and liability per occurrence is limited to a statutory amount or the policy limits for any excess coverage purchased to cover such claims. In Beaumont, several individuals were injured in an accident with a school bus. Id. at 1135 (¶ 1). The school board had an automobile liability insurance policy with aggregate limits of $1,000,000 per occurrence. Id. at (¶ 2). Several other injured individuals settled their claims for approximately $450,000. Id. at (¶ 2). Beaumont went to trial and won a verdict of $800,000. Id. The trial court did not reduce the judgment to the remainder of the insurance policy limits. Id. The supreme court reversed and determined that Beaumont’s recovery was limited to the difference between the policy limits and the amount of the prior settlement. Id. at 1137-38 (¶ 7). Thus, regardless of the number of claimants, an automobile accident that involves several injured parties, under the MTCA, is but one occurrence, and the governmental entity’s total liability was limited.
¶ 103. In Allred v. Yarborough, 843 So.2d 727, 727-28 (¶ 1) (Miss.2003), the court considered an accident between an employee of a state entity and another vehicle with three occupants who were injured in the accident. One of the injured individuals filed a lawsuit against the state entity. Id. at (¶ 2). An interpleader and declaratory-judgment action was filed, and the sum of $50,000 was interpled. Id. The trial court determined that the injured individuals could only collect the statutory limit under the MTCA of $50,000 for one accident. Id. at (¶ 3). The supreme court held that the trial court was correct to limit liability. Id. at 730 (¶ 11).
¶ 104. In City of Jackson v. Estate of Stewart ex rel. Womack, 908 So.2d 703, 705 (Miss.2005), the court considered the appeal of a $1,000,000 verdict in an MTCA action where an elderly lady fell after exiting a City of Jackson van while entering a University of Mississippi Medical Center (“UMMC”) daycare center. The injured person sued the City, the driver, and UMMC. Id. at 707 (¶ 14). Her lawsuit was based in tort and on breach of an implied contract, relating to the agreement between the City and UMMC. Id. at (¶ 17). The court considered the MTCA. The court determined that Mississippi Code Annotated section 11-46-3 (Rev. 1997) granted immunity to the City and UMMC for the “breach of [an] implied term or condition of any warranty or contract.” Id. at 711 (¶ 38). Further, the court determined that section “11-46-15 shall set ‘the extent of the maximum amount of liability.’ In this case, the maximum liability under § 11^46-15 at the time of the incident, was $250,000.” Id. at (¶ 39). As a result, the court concluded that both the contract and tort claims arose “from the same set of operative facts, and they allege the same damage.” Id. at (¶ 40). The court further stated that “this Court has never held that a plaintiff may pursue two causes of action or theories and, having established liability under both, collect the same damages under both.” Id. The court concluded:
This Court recently held “that ‘[t]here can be but one satisfaction of the amount due the plaintiff for his damages’ .... Thus, double recovery for the same harm is not permissible.” Medlin v. Hazlehurst Emergency Physicians, 889 So.2d 496, 500-01 (Miss.2004).
The trial court correctly held that the maximum recovery against the City for Mrs. Stewart’s tort claim was $250,000. Her maximum recovery under her claim for breach of implied contract is also the same $250,000. However, these are the same damages awarded under two separate theories of recovery. As such, Mrs. Stewart’s estate is entitled to only one *662 recovery. Thus, she may recover no more than $250,000, whether for negligence, breach of contract, or both.
Estate of Stewart, 908 So.2d at 711-12 (¶¶ 41-42).
¶ 105. Here, we have neither one automobile accident nor one slip-and-fall event. Indeed, I have found no Mississippi authority directly on point. This is the exact reason that it is so important for the circuit judge to explain his findings of fact and conclusion of law in detail.
¶ 106. S.W. commenced this litigation to recover damages due to the negligence of DHS. S.W. claims that DHS’s negligence occurred over a fourteen-month period, beginning in October of 1996 and ending in December of 1997. S.W.’s claim of negligence does not point to one event but a series of events that occurred during this period. In fact, S.W. claims that his damages were the result of the cumulative actions of DHS over that entire time period.
¶ 107. The plurality cites the continuing-tort doctrine in Pierce v. Cook, 992 So.2d 612, 619 (¶ 25) (Miss.2008). The plurality finds that continuing tort doctrine applies. I am not sure it does. After June of 1997, there was no “continuing or repeated injury” to S.W. through any further sexual abuse. Id. The underlying tortious acts had been completed. S.W.’s only remaining issues after June of 1997 were for “continual ill effects from [the] original violation.” Id. The doctrine may apply if there were “continuing or repeated injuries,” but “the defendant must commit repeated acts of wrongful conduct.” Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 148-49 (Miss.1998). The continuing-tort doctrine does not apply “when harm reverberates from one wrongful act or omission.” Id. at 149.
¶ 108. At trial, S.W. did not establish, and the circuit judge did not find, a specific or separate injury that resulted from each of DHS’s separate “occurrences.” In fact, based on the plurality’s analysis and factual findings, the evidence appears to only support a conclusion that S.W.’s damages were the result of the cumulative effect of DHS’s acts, actually DHS’s omissions, that occurred during the fourteen-month period. Thus, without the circuit court’s detailed findings of fact and conclusions of law, this Court is not able to determine if each breach was a separate occurrence or whether the harm to S.W. simply “reverberates from one wrongful act or omission.” Pierce, 992 So.2d at 619 (¶ 25).
¶ 109. The circuit judge’s order reveals that the judge improperly considered the statutory cap before he made a finding of damages for each occurrence. The MTCA does not set the amount of damages to be awarded for each occurrence in this case. Section 11-46-15(1) states that the “liability shall not exceed” the applicable cap, not the total amount of damages. (Emphasis added). The MTCA merely provides a cap with which to reduce the award of damages, which must be based on the proof presented by S.W.
¶ 110. Without further explanation, the circuit judge awarded S.W. the amount of damages ($50,000) for each occurrence. With the record before us, I am at a loss to understand why a missed quarterly visit spanning a three-month period in which S.W. was being sexually abused multiple times per week results in the same amount of damages as a missed monthly visit in which S.W. resided with his mother. Without more, I simply cannot find substantial evidence to support such a finding or assess whether this was a single occurrence or multiple separate occurrences.
¶ 111. Because I do not find substantial evidence to support the circuit court’s *663 award of damages on remand, I would again remand this case for further proceedings on damages.
BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., JOIN THIS OPINION.

. The plurality seems to now say that the circuit court was not required to provide this Court with detailed findings of fact and conclusions of law. The plurality cites Jordan v. McAdams, 85 So.3d 932 (¶ 23) (Miss.Ct.App.2012), for the proposition that there can be “no deficiency in the trial court's finding of *648 fact for lack of more detail” because DHS did not file a Mississippi Rule of Civil Procedure 52 motion. If indeed that is the case, this Court could have reviewed the record, as the plurality does here, in 2007. Instead, this Court unanimously determined that, unlike Jordan, the circuit court was required to provide additional findings of fact to complete our appellate review of the damages awarded. S.W., 974 So.2d at 264 (¶¶ 35-36). No Rule 52 motion was necessary to require the circuit court to provide findings of fact; this Court's earlier opinion required the additional detailed findings of fact. See also Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 239 (Miss.1987) (trial courts "generally should find the facts specially and state and state its conclusions of law thereon” in complex cases). Moreover, just as we decided in 2007, to perform our appellate function, we must know what the trial court did and why.

. The plurality cites Fortenberry v. City of Jackson, 71 So.3d 1196 (Miss.2011), as authority. In Fortenberry, the supreme court incorrectly described our holding in S.W. The supreme court characterized our earlier opinion as follows:
While the Fortenberrys and Wallaces further provide statements made by the City engineer and complaints made by themselves and/or their neighbors over the course of a three-year period, no authority supports their assertions that the statements and complaints can convert a statutorily designated discretionary function into a ministerial one. They cite.... Miss[issippi Department] of Human [Services] v. S.W., 974 So.2d 253, 256 (Miss.Ct.App.2007). There, we [sic] found that the use of a manual, which outlined preventive procedures, converted the discretionary functions of DHS into ministerial functions. Id. at 260. This case is different from S.W., because no authority or action converts the City's decision from discretionary to ministerial.
Fortenbeny, 71 So.3d at 1201 (¶ 13) (emphasis added). This Court’s opinion did not hold that governmental action could be "converted” "from discretionary to ministerial.” Id.; see S.W., 974 So.2d at 260. Indeed, I am aware of no such authority. In S.W., this Court did not decide that certain governmental functions could be converted from discretionary functions into a ministerial functions. Id. With the utmost respect for the supreme court, I can find no authority or evidence in this case, or any other case, to support the legal principle that the MTCA allows a government function to be converted from a discretionary to ministerial function. The supreme court’s discussion of S.W. appears to have a factual flaw.

. In Fortenberry, the supreme court referred to our opinion and wrote, "[The appellants] cite Mississippi Department of Human Services v. S.W., in which the Court of Appeals had the difficult task of determining whether DHS was liable to a juvenile who had been *651 sexually abused by the Department’s employees. Miss. Dep't of Human Servs. v. S.W., 974 So.2d 253, 256 (Miss.Ct.App.2007).” Fortenberry, 71 So.3d at 1201 (¶ 13). Again, with great respect to the supreme court, I can find no evidence in this case, or in S.W., to support the factual finding that S.W. was sexually abused by "the Department's employees.”
S.W.’s sexual encounter with Larenzo Williams began while Williams was an employee of the CDU, a Mississippi Department of Mental Health facility. Also, the record does not support a finding that SNIPS was a DHS facility or that Howard was a DHS employee.

. Actually, the damages for the failure to provide counseling and conduct an adequate investigation had to have occurred after S.W. had returned to the physical custody of his mother. Thus, $400,000 was awarded for the time period after he returned home and there were no further sexual encounters.